**RECEIVED**

JAN 1 0 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SMITH MARITIME, INC. | : | DOCKET NO. 2:11-731 |
| VS. | : | JUDGE TRIMBLE |
| LAY DRILLING BARGE AKPEVWEOGHENE (EX CHEROKEE) AND ITS OWNER, FENOG NIGERIA, LTD. et al | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is "Defendants' Motion and Incorporated Memorandum in Support for Reconsideration of Order Entered October 2, 2012" (R. #59) wherein defendant LAY BARGE AKPEVWEOGHENE (EX CHEROKEE) (the "vessel") and Fenog Nigeria, Ltd. ("Fenog," collectively referred to as "defendants") move to reverse the order of the Magistrate Judge which allowed third party defendant, Generation Marine Services, Inc. ("Generation Marine") to file its First Supplemental and Amended Counterclaim against Fenog.

## FACTUAL ALLEGATIONS

The underlying suit arises out of an alleged contract negotiated between Generation Marine Services, Inc. ("Generation Marine") and Fenog Nigeria, Ltd. ("Fenog") for the towage of the LAY DRILLING BARGE AKPEVWEOGHENE (EX CHEROKEE), from Louisiana to Africa using a tug, ELSBETH II which was owned by Smith Maritime. In March 2011, Fenog and Generation Marine negotiated the terms of the tow. Generation Marine presented Fenog with a towage contract which included the terms of the parties' agreement to tow the EX-CHEROKEE. Fenog tendered

Generation Marine a security deposit of $450,000 for the towage. The parties did not execute the contract (referred to as the BIMCO TOWCON– dated March 31, 2011). Generation Marine alleges that it is common industry practice for the parties to enter a verbal agreement. Generation Marine gave verbal approval to plaintiff, Smith Maritime, to begin preparations to tow the EX CHEROKEE. Preparations included obtaining fuel, food, medicine, crew, inoculations, two assist tugs and miscellaneous supplies.

Due to the exigent circumstances and the need to remove the EX CHEROKEE, a surveyor was called out on emergency status to survey the EX CHEROKEE and the ELSBETH II. The ELSBETH II passed the survey with no issues that would impede the voyage from Louisiana to Africa. However, because of safety issues with the EX CHEROKEE, the tow was delayed. On May 6, 2011, Fenog cancelled the tow; Smith Maritime alleges the cancellation was without sufficient and reasonable explanation.

Smith Maritime filed a complaint on May 13, 2011 against defendants Fenog and the EX CHEROKEE. The EX CHEROKEE was arrested the same day in Lake Charles. Fenog and Smith Maritime reached an agreement wherein the EX CHEROKEE would be released conditioned upon Fenog making an appearance, filing an answer, and placing $799,949 into an escrow account. Smith Maritime and Fenog executed the Escrow Agreement on May 25, 2011 and Fenog placed the funds into the trust account of its attorneys. The EX CHEROKEE was released pursuant to a Stipulated Motion for Release of a Vessel or Property in Accordance with Supplemental Rule (E)(5)[1] and Order dated May 27, 2011.[2]

---

[1] R. #13.

[2] R. #17.

2

On June 4, 2012, defendant, Fenog, filed an "Unopposed Motion for Leave to File a Third Party Complaint Against Generation Marine Services, Inc." for breach of contract;[3] that leave was granted. Generation Marine answered and asserted a counterclaim against Fenog.[4] On September 28, 2012, Generation Marine filed an "Ex parte Motion of Generation Marine Services, Inc. To File First Supplemental and Amended Counterclaim and Incorporated Memorandum in Support."[5] Generation Marine asserts in its Local Rule 7.4.1 Certificate that Smith Maritime, Ltd. does not oppose the request for leave, however no response had been received from Fenog.[6] In that motion, Generation Marine adds a claim against Fenog pursuant to Rule B of the Supplemental Rules of Civil Procedure for Certain Admiralty and Maritime Claims.[7] In its amended complaint, Generation Marine attempts to attach the Escrow Agreement Funds.

On October 2, 2012, the Magistrate Judge granted Generation Marine's motion for leave to amend via an Electronic Order.[8] On that same day, Fenog filed an opposition to the motion for leave

----

[3] R. #35.

[4] R. #40.

[5] R. #52.

[6] R. #52-2. An email was sent from Jacob Gardner, Jr. to counsel for the parties on September 26, 2012. Exhibit A, R. #52-1.

[7] Generation Marine notes that Fenog has filed a motion for summary judgment against Smith Maritime arguing that Smith's claims must be dismissed because Smith had no privity of contract. Generation Marine is attempting to attach the Escrowed Funds in the event Fenog is successful on its motion for summary judgment and removes these funds from the jurisdiction of the court.

[8] R. #56.

to amend.[9]  Fenog asserts that the Escrowed Funds can only secure Smith's *in rem* claims and that Rule B attachment is not available to Generation Marine.  Fenog argues that Generation Marine is asserting *in personam* claims in its amended complaint.  Consequently, Fenog filed the instant motion for reconsideration of the Magistrate's Order allowing Generation Marine to file the amended complaint.

## LAW AND ANALYSIS

Fenog maintains that Generation Marine cannot attach the Escrowed Funds under Rule B.  Fenog argues that the funds were placed in escrow specifically and solely for the purpose of securing *in rem* claims against the Vessel and to precipitate the Vessel's release.  Fenog further argues that the funds cannot secure any other claims including the *in personam* claims Generation Marine asserts in its amended complaint.  Thus, Fenog seeks to have the court reverse the Magistrate Judge's order granting the motion for leave to file the amended complaint or dismiss the amended complaint.

Fenog posits that because Generation Marine seeks only to obtain security for its claims against Fenog, and Fenog has already subjected itself to the jurisdiction of this Court by way of a general appearance in answering Smith Maritime's Complaint, Rule B attachment would be improper.  Fenog relies on Rapture Shipping Ltd.,[10] wherein the court vacated an attachment in a second duplicative suit because "security cannot be obtained except as an adjunct to obtaining jurisdiction."  Generation Maritime maintains that the Rapture Shipping case does not support Fenog's argument that an appearance precludes a Rule B attachment.

---

[9]  Fenog's opposition is being considered by the court as it memorandum in support of the motion for reconsideration.

[10]  2006 WL 2474869 at *2, quoting Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963).

Rule B allows for the attachment and garnishment of a defendant's property when a defendant cannot be found within the district.[11] The purpose of a maritime attachment is to "secure jurisdiction over an absent party and to get security for a potential judgment where the absent party's assets are transitory."[12]  In order to obtain authority for the issuance of *quasi in rem* process, a plaintiff must show that the defendant cannot be found within the district,[13] and that the *in personam* claim falls within the court's admiralty and maritime subject matter jurisdiction.[14]

A defendant is "found within the district," in the context of maritime rules if the defendant "can be found within the district in terms of jurisdiction" and "can be found for service of process." . . . In other words, not only must Fenog be able to accept process, but Fenog must also "be engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept process.'"[15]

Fenog argues that because it has already consented to the jurisdiction of this court, the only purpose of the attachment is to obtain security. Fenog maintains that a Rule B attachment cannot be made after the party whose property is the subject of the would-be attachments has made a general appearance in the suit.  Fenog argues that once a general appearance is made, the right to attach property is immediately lost relying on Maryland Shipbuilding & Drydock Company v. Pacific Ruler

---

[11]  Rule B(1)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

[12]  Aqui Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 435 (2d Cir. 2006).

[13]  Fed. R. Civ. P. Supp. Rule B(1).

[14]  Id., Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd., 478 F.Supp.2d 532, 535-536 (S.D.N.Y. 2007) Western BulkCarriers (Australia) Party, Ltd. v. P.S. Int'l, Ltd., 762 F.Supp 1302, 1306 (S.D. Ohio 1991).

[15]  Seawind Compania, S.A., 320 F.2d at 582-83.

5

Corp.,[16]  Thus, Fenog maintains that its general appearance precludes the possibility of the Rule B attachment.

Generation Marine maintains that a party's general appearance in a lawsuit does not satisfy the jurisdictional test when its other contacts within the State are insufficient.[17] Generation Marine maintains that Fenog has failed to introduce evidence of any contacts within the district other than its general appearance, and even if it had, Fenog has failed to make a showing that it has an agent for service of process within the district.[18]

In Staronset Shipping Ltd. v. North Star Nav. Inc.,[19] the court upheld a subsequent attachment and held that the spirit of Rule B was not violated when a party's primary interest in seeking the attachment is to obtain security to satisfy a judgment if that party satisfied the requirements for attachment.

Fenog relies on Metal Transport Corp. v. Account No. 232-2-405842,[20] for its position that an attachment is vacated when there is a  general appearance.  However, in Metal Transport, in vacating the attachment, the court held that in order to vacate a writ of garnishment, the defendant must have sufficient contacts within the district to constitute a basis for jurisdiction **and** the defendant must be able to be served with process in the district.  The defendant's presence in both

---

[16] 201 F.Supp. 858 (S.D.N.Y. 1962).

[17] Oilmar Co. v. Energy Transport, Ltd., 2003 U.S. Dist. LEXIS 14350 (E.D. Ct. 2003).

[18] The Fifth Circuit has held that Rule B allows a maritime attachment whenever a defendant cannot be served with process within a particular District. LeBanca v. Ostermuncher, 664 F.2d 65 (5th Cir. 1981).

[19] 659 F.Supp. 189 (S.D.N.Y. 1987).

[20] 1990 WL 103987 (S.D.N.Y. 1990).

senses is required to vacate a maritime attachment.[21]  A careful reading of the Metal Transport case leads us to believe that a general appearance by itself was not the reason the court vacated the attachment.  The court specifically found that the defendant could be found in the district because *both* prongs of the test were satisfied– having sufficient contacts and the ability to be served with process.

In order to determine if the requirements for attachment have been met, we must determine if Fenog can be found within the district in terms of jurisdiction and can be found for service of process. As to sufficient contacts, Fenog argues that the court has *in personam* jurisdiction because Fenog made a general appearance and the object of the suit is a breach of contract which was allegedly breached in the district.[22]  Generation Marine, on the other hand, argues that because Fenog's defense is that no contract existed (relying on Fenog's defenses asserted in their answer and the motion for summary judgment[23] filed against Smith Maritime)[24], then there are insufficient contacts to constitute a basis for jurisdiction. Generation Marine submits that Fenog has failed to introduce evidence of any contacts and Fenog has failed to make a showing that it has an agent for service of process within the district.

Generation Marine has attached an affidavit which confirms that it has contacted the

---

[21]  See Integrated Container Service, Inc. v. Starlines Container Shipping Ltd., 476 F.Supp. 119, 122 (S.D.N.Y.).

[22]  Fenog is a Nigerian corporation, with its principal place of business at Warri, Delta State, Nigeria. R. #1.

[23]  R. #65.

[24]  Fenog represents that the unsigned towage contract states that the place of agreement was Berwick, Louisiana.

7

Louisiana Secretary of State and telephone directories for both Lafayette and Lake Charles which indicate that Fenog is not conducting business within the District.[25]  Fenog does not dispute this. Generation Marine maintains Fenog cannot satisfy both prongs of the test: specifically that Fenog cannot be "found within the district" because Fenog does not have sufficient contacts and/or because there is no service of process in the district as to Fenog. We agree. Even though this is a contract dispute, and the contract took place in Louisiana, Fenog maintains that a contract does not exist. Be that as it may, Fenog has presented no evidence that service of process can be made on the foreign defendant. Therefore, Fenog has failed to establish that it can be found within the district. The court concludes that Generation Marine can assert a claim for attachment of the Escrowed Funds.

In the alternative, Generation Marine asks the court, in the event that we strike the Rule B claim, that it be allowed to file another amended complaint and seek to attach the Escrowed Funds under Rule C of the Supplemental Federal Rules of Civil Procedure for Certain Admiralty and Maritime Claims and/or Louisiana state law. Because we find that Generation Marine can assert the Rule B claim, we need not address this issue at this time.

## CONCLUSION

For the reasons set forth above, the motion for reconsideration will be denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this _10th_ day of January, 2013.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[25] R. #61, ¶ 14; Generation Marine exhibit B, affidavit of W. Jacob Gardner, Jr.

8